**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:25-CV-977-MR-DCK**

| | | |
|---|---|---|
| **MARCUS ANTONIO SATTERFIELD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **MEMORANDUM AND RECOMMENDATION** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| | ) | |
| **MATTHAN HICKS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss" (Document No. 22), Plaintiff's "...Response" (Document No. 26), Defendants' "Reply…" (Document No. 28), Plaintiff's unauthorized Surreply[1] (Document No. 31), and Plaintiff's "Motion … for Jury Trial" (Document No. 35). This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and is now ripe for disposition.

Having carefully considered the arguments, the record, and applicable authority, the undersigned respectfully recommends that Defendants' Motion to Dismiss (Document No. 22) be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

*Pro se* Plaintiff Marcus Antonio Satterfield ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Johnston Correctional Institution in Smithfield, North Carolina. On December 9, 2025, he filed this action pursuant to 42 U.S.C. § 1983 by unverified Complaint

[1] Because this unauthorized surreply also included Plaintiff's reply to the Court's Order requiring Plaintiff to inform the Court whether he intended to proceed with this action, the undersigned does not strike it from the record. See (Document Nos. 25, 31); LCvR 7.1(e). The undersigned will not, however, consider it here and notes that it would not change the outcome in any event.

based on alleged events at Avery/Mitchell Correctional Institution ("AMCI") in Spruce Pine, North Carolina.[2] (Document No. 1). Plaintiff named the following AMCI officials as Defendants: Richard Ellis, Sergeant; Matthan Hicks, Correctional Officer; Danny Stafford, Correctional Officer; Landon Brown, Unit Manager; Loren Aldrige, Unit Manager; Derrick E. Fox, not otherwise identified; Robert B. Bullis, Warden, and FNU Crow, Assistant Warden, all in their individual and official capacities. (Id. at 1-3). Plaintiff also named the Department of Adult Correction ("NCDAC") and AMCI as Defendants. (Id. at 1).

Plaintiff alleged as follows.

Defendants have a custom of using excessive force and false documentation and allegations to cover up their actions, as well as of shredding grievances, "[d]enying [p]rocess of [a]ny [a]nd [a]ll complaints," and degrading and disrespecting offenders to provoke and assault them. (Id. at 4).

On July 21, 2023, between 5:00 and 6:30 p.m., Defendants Stafford, Hicks, and Ellis called Plaintiff out of the dorm and into the hallway where these Defendants verbally assaulted Plaintiff and Defendant Ellis threatened him. (Id. at 4-5). Plaintiff was ordered to submit to handcuffs under false allegations. (Id.). Defendant Hicks twisted Plaintiff's wrist and "[b]utterflied" his hands before applying the handcuffs and "[j]acked" Plaintiff's shoulder. (Id.). Defendant Stafford carried Plaintiff to isolation alone. (Id. at 5). After this incident, the "Institution Head Leaders" insisted that the "officer [a]ccused … deal with it," meaning "cover it up." (Id.). Thereafter, Plaintiff noticed that he was harassed and targeted for "senseless [i]nfractions." (Id.).

On August 21, 2023, Defendants Brown and Aldrige attempted to cover up the July 21, 2023 incident by falsifying documents and placed Plaintiff in isolation again "[f]or [m]aking

[2] It appears that Plaintiff was housed at AMCI from April 6, 2023, to October 1, 2024. (Document No. 28-2).

[c]omplaints about [t]he [a]ctions going on in [t]heir unit," which caused Plaintiff to be "assaulted" when he submitted to handcuffs. (Id. at 4).

Plaintiff alleged that he filed a grievance concerning the facts at issue at AMCI and with the "Raleigh Grievance Resolution Board." (Id. at 7). Plaintiff further alleged that in his grievance he complained: (1) that he was falsely accused of an infraction, threatened, assaulted, and placed in isolation, and (2) that he was retaliated against after writing a grievance complaining that grievances were not getting processed and that staff was ignoring actions taken against inmates like the Plaintiff. (Id.). Plaintiff alleged that he exhausted his administrative remedies and that he appealed this grievance through "[a]ll [s]teps." (Id. at 7-8). Plaintiff further alleged that, because of his grievance, the policy changed, and grievances are now honored. (Id. at 7).

Plaintiff's individual capacity excessive force claim against Defendant Hicks and his retaliation claim against Defendants Brown and Aldrige survived initial review. (Document No. 9 at 15-16). Plaintiff's remaining claims and the remaining Defendants were dismissed for Plaintiff's failure to state a claim for relief as further set forth in the Court's Order. (Id. at 5-16).

Defendants now move to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), for Plaintiff's failure to exhaust administrative remedies before filing this action. (Document No. 22). In support of their motion, Defendants submitted a brief, Declarations of Counsel and Executive Director of the Inmate Grievance Resolution Board (IGRB) Adrina Bass; a copy of Plaintiff's Correspondence Tracking System (CTS); copies of Plaintiff's six (6) exhausted grievances submitted between January 1, 2023, and December 31, 2024; a copy of one grievance Plaintiff appealed to Step Two during this same time frame; and a copy of the North Carolina Department of Adult Correction (NCDAC) Administrative Remedies Policy (ARP). (Document Nos. 23, 23-

1 to 23-3).

The undersigned entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendants' motion and warning him that his failure to timely to do so "will likely lead to the granting of relief that Defendants seek." (Document No. 24). Plaintiff filed a one-page response to the Defendants' motion. (Document No. 26). Defendants filed a reply, which included copies of two letters Plaintiff appears to have written complaining about the July 21, 2023 incident and generally about staff conduct and the grievance process at AMCI, respectively.[3] (Document No. 28; see Document No. 34). Plaintiff has also now filed a purported demand for a jury trial against all originally named Defendants in which he complains that Defendants were dismissed "without proper cause" and that a trial is necessary to determine whether dismissal was proper. (Document No. 35).

This matter is now ripe for adjudication.

## II. DISCUSSION

The Prison Litigation Reform Act ("PLRA") requires a prisoner to exhaust administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section

[3] Due to apparent technical difficulties while docketing, only half of one page of one letter written by the Plaintiff originally appeared in the docket. (See Document No. 28-1). On notification by the Clerk's Office of this error, Defendants promptly filed what appear to be two letters written by the Plaintiff. (See Document No. 34). One letter is dated July 21, 2023, and purports to notify officials of Eighth Amendment violations that occurred that day at AMCI (the "First Letter"). Oddly, Plaintiff identifies a Sergeant Boone as the official responsible for the conduct Plaintiff now attributes to Defendant Hicks. (Id. at 1-2). Plaintiff wrote the second letter, which appears to be directed to the "Department of Public Safety over Adults Corrections of Avery Mitchell," on August 9, 2023 (the "Second Letter"). (Id. at 3-4). In the Second Letter, Plaintiff complains about the AMCI staff's practice of provoking altercations through verbal abuse and falsely accusing offenders when these efforts fail, as well as disregarding grievances and the grievance process. (Id. at 3). It appears that the Second Letter is the "complaint" Plaintiff alleged resulted in the retaliation by Defendants Brown and Aldrige on August 21, 2023. These letters were marked received by the NCDAC Office of the Secretary on August 16, 2023, and by the NCDPS-Prisons Commissioner on August 18, 2023. (Id. at 1, 3).

1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter, 534 U.S. at 524). The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The exhaustion of administrative remedies must occur before a civil action is commenced. Porter, 534 U.S. at 516. A prisoner may not exhaust his administrative remedies during the pendency of a § 1983 action. Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011). An inmate, however, is not required to affirmatively show exhaustion in his complaint. See Bock, 549 U.S. at 216. "Rather, failure-to-exhaust is an affirmative defense that must be raised by the defendant." Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017) (citing Bock, 549 U.S. at 216).

A prisoner, however, need only exhaust those remedies actually available. Ross v. Blake, 578 U.S. 632, 635 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 642 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). A prisoner, however, must show that administrative remedies were not available. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (finding it significant that the record was devoid of

evidence that any jail official impeded or discouraged any efforts that detainee-plaintiff made or could have made to file a grievance).

The NCDAC has established the ARP, a three-step procedure governing submission and review of inmate grievances. See Moore, 517 F.3d at 721 (regarding the comparable ARP procedures at NCDAC-predecessor North Carolina Department of Public Safety); (Document No. 23-2). Inmates are required to exhaust administrative remedies with the NCDAC in accordance with the ARP. See id. An inmate does not exhaust administrative remedies with the NCDAC until all three steps are completed. See id.

In support of their motion to dismiss, Defendants provide copies of Plaintiff's six (6) fully exhausted grievances submitted between January 1, 2023, and December 31, 2024, including a grievance Plaintiff fully exhausted while at AMCI; a copy of a December 23, 2023 grievance Plaintiff appealed to Step Two while at AMCI; and a copy of Plaintiff's CTS, which logs all grievances and other correspondence filed and transmitted by the Plaintiff while in custody. See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may also consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic."); see also Document No. 23-2 at ¶¶ 4-6: Counsel Dec. (attesting to authenticity of grievance records and CTS); Doc. No. 23-3 at ¶ 11 and at 4: Bass Dec. (same regarding exhausted grievances).

These records show that, between January 1, 2023, and December 31, 2024, while housed at five different correctional facilities, Plaintiff fully exhausted six (6) grievances, one of which was exhausted while he was housed at AMCI. (Document No. 23-2 at 16-17; 23-3 at ¶ 11, 23-3 at 5-43). None of these grievances involved the subject of Plaintiff's Complaint here. These records also show that Plaintiff filed a grievance on December 23, 2023, at AMCI that he appealed

at Step One and then agreed with the Step Two response thereto. (Document No. 23-2 at 22-26). In this grievance, Plaintiff complained that he was improperly ordered to leave the chow hall while he was drinking milk. (Id. at 22). These records also show that Plaintiff submitted eight (8) grievances at AMCI between January 2, 2024, and May 28, 2024, that were logged into Plaintiff's CTS but copies of which were not provided here. (Document No. 23-2 at 16-17). Seven of these logged grievances complained of staff conduct and one related to a mail issue.[4] (Id.). Finally, these records show that Plaintiff sent a "letter" to prison management that was logged in Plaintiff's CTS on August 18, 2023, regarding staff conduct, grievances, and disciplinary issues, which appear to be the First and Second Letters provided by Defendants. (Doc. 23-2 at 17).

In response, Plaintiff filed an unverified one-page document. (Document No. 26). In his response, Plaintiff argues that, given how long he was housed at AMCI, "[m]ore grievances would or should [h]ave [b]een filed and not [d]estroyed." (Id.). Plaintiff contends that this proves the destruction of grievances, including the grievance that Defendants Brown and Aldrige were supposed to investigate. (Id.). Plaintiff contends that the grievances from 2023 were destroyed and that Bass "never" responded to any grievance. (Id.). Plaintiff claims that Defendants' motion should be denied because he has "[a]ctual [e]vidence of [r]eports." (Id.).

In reply, Defendants point to the ten (10) total grievances Plaintiff filed while at AMCI, none of which concern the events raised in Plaintiff's Complaint and which Defendants contend negate Plaintiff's claim that AMCI officials were destroying his grievances. (Document No. 28 at 3). Defendants also filed the First and Second Letters described supra. (See Document No. 28-1). As noted, these letters were marked received by the NCDAC Office of the Secretary on August 16, 2023, and by the NCDPS-Prisons Commissioner on August 18, 2023. (Document No. 34 at 1,

[4] Plaintiff does not contend that any of these grievances concerned the matters at issue and the deadline to file a grievance would have long since passed when these were filed.

3). It appears that these letters are the same letter logged in Plaintiff's CTS on August 18, 2023. (See Doc. 23-2 at 17).

The integral records presented by Defendants demonstrate that Plaintiff did not exhaust a grievance regarding either the alleged excessive force incident by Defendant Hicks or the alleged retaliation by Defendants Brown and Aldrige.[5] These records also show that Plaintiff had ready access to the grievance procedure and was able to submit, appeal, and exhaust grievances while at AMCI. These records also undermine Plaintiff's allegations that Defendants denied process to "any and all" complaints at AMCI.

In contrast, in his unverified Complaint, Plaintiff alleged having fully exhausted the grievance process relative to the alleged excessive force and retaliation, while simultaneously alleging that Defendants shred grievances and deny process to all complaints. In his unverified response to Defendants' motion to dismiss, Plaintiff now vaguely claims that the relative lack of grievances while Plaintiff was housed at AMCI proves the destruction of grievances, including the one Defendants Brown and Aldrige were supposed to investigate. The undersigned finds this contention inapposite. Plaintiff's retaliation claim is based on Defendants Brown and Aldrige's alleged response to Plaintiff's Second Letter, that is the alleged "cover up," falsification of documents, and placing Plaintiff in isolation. As such, on the one hand, Plaintiff contends all his grievances were destroyed and on the other hand that in investigating the claims made in Plaintiff's Second Letter, Defendants Brown and Aldrige falsified documents and retaliated against Plaintiff. He can't have it both ways.

Moreover, while Plaintiff wrote a letter complaining about a July 21, 2023 incident involving Sergeant Boone and two unnamed officials and a letter on August 9, 2023, generally

[5] Moreover, in the First Letter, which Plaintiff wrote on the day of the July 21, 2023, incident, Plaintiff blamed the excessive force on Sergeant Boone and did not identify the two other officers involved.

complaining about staff conduct and the grievance process at AMCI, these letters do not satisfy the ARP and neither purport to grieve the retaliation claim in any event.

From the foregoing, the undersigned concludes that Plaintiff did not fully exhaust his administrative remedies as to either claim before filing the instant action. Nor has Plaintiff shown that his administrative remedies were unavailable. Rather, he vaguely claims that grievances were destroyed at AMCI and submits contradictory, unverified assertions regarding whether he exhausted his administrative remedies.

For these reasons, the undersigned will recommend that the Defendants' motion be granted and that this action be dismissed without prejudice for Plaintiff's failure to exhaust his administrative remedies.[6] See Harris v. Midford, No. 1:10-cv-263, 2011 WL 1601446 (W.D.N.C. Apr. 27, 2011). The undersigned will deny Plaintiff's pending motion for trial (Document No. 35) as unfounded, improper, and moot.

Accordingly, the undersigned respectfully recommends that Defendants' Motion to Dismiss (Document No. 22) be granted and that the action be dismissed without prejudice.

## III. RECOMMENDATION AND ORDER

**FOR THE FOREGOING REASONS**, the undersigned respectfully recommends that "Defendants' Motion To Dismiss" (Document No. 22) be **GRANTED**, and that Plaintiff's Complaint (Document No. 1) be **DISMISSED WITHOUT PREJUDICE**.

[6] While the undersigned is mindful that "parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment," Perttu v. Richards, 605 U.S. 460, 468 (2025), there is no such intertwinement or need for a jury finding here. Whether Plaintiff exhausted his remedies relative to the excessive force claim is wholly distinct from that substantive claim and the merits of Plaintiff's retaliation claim do not hinge on whether Plaintiff filed or exhausted a proper grievance where such retaliation was allegedly based on a letter that Defendants themselves provided and do not dispute.

**IT IS, THEREFORE, ORDERED** that Plaintiff's "Motion Demand for Jury Trial" (Document No. 35) is **DENIED**.

## IV. TIME FOR OBJECTIONS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained in this Memorandum must be filed within fourteen days after service of same. Failure to file objections to this Memorandum with the Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. Id. "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'" Martin v. Duffy, 858 F.3d 239, 245 (4th Cir. 2017) (quoting United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO ORDERED AND RECOMMENDED**.

Signed: September 2, 2026

David C. Keesler
United States Magistrate Judge