**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:25-cv-00977-MR-DCK**

| | | |
|---|---|---|
| **MARCUS ANTONIO SATTERFIELD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| **MATTHAN HICKS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on Defendants' Motion to Dismiss [Doc. 22]; the Magistrate Judge's Memorandum and Recommendation regarding the disposition of Defendants' Motion to Dismiss [Doc. 36]; and the Plaintiff's "Motion for Direct Appeal" [Doc. 37], which was docketed as a Notice of Appeal and which the Court also construes as Plaintiff's Objection to the Recommendation.

## I. PROCEDURAL BACKGROUND

Pro se Plaintiff Marcus Antonio Satterfield ("Plaintiff") is a prisoner of the State of North Carolina currently incarcerated at Johnston Correctional Institution in Smithfield, North Carolina. On December 9, 2025, he filed this action pursuant to 42 U.S.C. § 1983 by unverified Complaint based on events alleged to have occurred at Avery/Mitchell Correctional Institution ("AMCI")

in Spruce Pine, North Carolina.[1] [Doc. 1]. Plaintiff named the following AMCI officials as Defendants: Richard Ellis, Sergeant; Matthan Hicks, Correctional Officer; Danny Stafford, Correctional Officer; Landon Brown, Unit Manager; Loren Aldrige, Unit Manager; Derrick E. Fox, not otherwise identified; Robert B. Bullis, Warden; and FNU Crow, Assistant Warden, all in their individual and official capacities. [Id. at 1-3]. Plaintiff also named the Department of Adult Correction ("NCDAC") and AMCI as Defendants. [Id. at 1].

Plaintiff alleged as follows.

Defendants have a custom of using excessive force and false documentation and allegations to cover up their actions, as well as degrading and disrespecting offenders to provoke and assault the officers. [Doc. 1 at 4].

On July 21, 2023, between 5:00 and 6:30 p.m., Defendants Stafford, Hicks, and Ellis called Plaintiff out of the dorm and into the hallway where these Defendants verbally assaulted Plaintiff and Defendant Ellis threatened him. [Id. at 4-5]. Plaintiff was ordered to submit to handcuffs under false allegations. [Id.]. Defendant Hicks twisted Plaintiff's wrist and "[b]utterflied" his hands before applying the handcuffs and "[j]acked" Plaintiff's shoulder.

[1] It appears that Plaintiff was housed at AMCI from April 6, 2023, to October 1, 2024. [Doc. 28-2].

[Id.]. Defendant Stafford carried Plaintiff to isolation alone. [Id. at 5]. After this incident, the facility leaders insisted that the "officer [a]ccused … deal with it," meaning "cover it up." [Id.]. Thereafter, Plaintiff noticed that he was harassed and targeted for "senseless [i]nfractions." [Id.].

On August 21, 2023, Defendants Brown and Aldrige attempted to cover up the July 21, 2023 incident by falsifying documents. They placed Plaintiff in isolation again for complaining about what was going on in their unit, which caused Plaintiff to be "assaulted" when he submitted to handcuffs. [Id. at 4].

Plaintiff alleged that he filed a grievance concerning the facts at issue at AMCI and with the "Raleigh Grievance Resolution Board." [Id. at 7]. Plaintiff further alleged that in his grievance he complained: (1) that he was falsely accused of an infraction, threatened, assaulted, and placed in isolation, and (2) retaliated against after writing a grievance complaining that grievances were not getting processed and that staff was ignoring actions taken against inmates like the Plaintiff. [Id.]. Plaintiff alleged that he exhausted his administrative remedies and that he appealed this grievance through "[a]ll [s]teps." [Id. at 7-8]. Plaintiff also alleged, however, that Defendants shred grievances and deny process to all complaints. [Id. at 4].

Plaintiff's individual capacity excessive force claim against Defendant

Hicks and retaliation claim against Defendants Brown and Aldrige survived initial review. [Doc. 9 at 15-16]. Plaintiff's remaining claims and the remaining Defendants were dismissed for Plaintiff's failure to state a claim for relief. [Id. at 5-16].

Defendants moved to dismiss this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), for Plaintiff's failure to exhaust administrative remedies before filing this action. [Doc. 22]. The Honorable David C. Keesler, United States Magistrate Judge, entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), notifying Plaintiff of his right to respond to Defendants' motion and warning him that his failure to timely to do so "will likely lead to the granting of relief that Defendants seek." [Doc. 24]. Plaintiff filed a one-page response in which he referenced the materials Defendants submitted in support of their motion to dismiss, which included Plaintiff's grievance records. [Doc. 26; see Docs. 23-2, 23-3]. Defendants filed a reply, which was served on Plaintiff at his address of record. [Doc. 28; see id. at 4].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, Judge Keesler was designated to consider the Defendants' motion and to submit a recommendation regarding its disposition. On

September 2, 2026, Judge Keesler entered a Memorandum and Recommendation, recommending that the Court should dismiss Plaintiff's claim without prejudice for failure to exhaust his administrative remedies. [Doc. 36]. Plaintiff timely filed unverified Objections. [See Doc. 37]. Defendants have not responded and the deadline to do so has expired.

This matter, therefore, is ripe for disposition.

## II. STANDARD OF REVIEW

### A. Standard of Review Applicable to a Magistrate Judge's Proposed Findings and Recommendation

The Federal Magistrate Act requires a district court to "make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In order "to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection." United States v. Midgette, 478 F.3d 616, 622 (4th Cir. 2007). The Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge to which no timely objections have been raised. Thomas v. Arn, 474 U.S. 140, 150 (1985). Additionally, the Court need not conduct a *de novo* review where a party makes only "general and conclusory objections that do not direct the court to

a specific error in the magistrate's proposed findings and recommendations." Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing pro se objections to a magistrate judge's recommendation, however, "district courts must review de novo any articulated grounds to which the litigant appears to take issue." Elijah v. Dunbar, 66 F.4th 454, 460-61 (4th Cir. 2023) (citing Martin v. Duffy, 858 F.3d 239, 245-46 (4th Cir. 2017)). "Such a requirement advances district court's obligation to liberally construe pro se objections while maintaining constitutional limitations on a magistrate's authority." Id. at 461.

**B. Exhaustion**

The PLRA requires a prisoner to exhaust his administrative remedies before filing a section 1983 action. 42 U.S.C. § 1997e(a). The PLRA provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Id. The PLRA's exhaustion requirement applies to all inmate suits about prison life. Porter v. Nussle, 534 U.S. 516, 532 (2002). There is "no question that exhaustion is mandatory under PLRA and that unexhausted claims cannot be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007) (citing Porter,

534 U.S. at 524). The PLRA requires "proper" exhaustion, which means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Woodford v. Ngo, 548 U.S. 81, 90 (2006) (quoting Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002)).

The exhaustion of administrative remedies must occur before a civil action is commenced. Porter, 534 U.S. at 516. A prisoner may not exhaust his administrative remedies during the pendency of a § 1983 action. Germain v. Shearin, 653 Fed. Appx. 231, 234 (4th Cir. 2016); French v. Warden, 442 F. App'x 845, 846 (4th Cir. 2011). An inmate, however, is not required to affirmatively show exhaustion in his complaint. See Bock, 549 U.S. at 216. "Rather, failure-to-exhaust is an affirmative defense that must be raised by the defendant." Wilcox v. Brown, 877 F.3d 161, 167 (4th Cir. 2017) (citing Bock, 549 U.S. at 216).

A prisoner, however, need only exhaust those remedies actually available to him. Ross v. Blake, 578 U.S. 632, 635 (2016). "Available" means "capable of use for the accomplishment of a purpose" and that which "is accessible or may be obtained." Id. at 642 (internal quotation marks and citation omitted). Exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it." Moore v. Bennette, 517 F.3d

717, 725 (4th Cir. 2008). The Fourth Circuit recently examined factors rendering a prison grievance process unavailable. Griffin v. Bryant, 56 F.4th 328 (4th Cir. 2022). Griffin recognized that a grievance process is unavailable:

> (1) where the remedy "operates as a simple dead end," with prison officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where an administrative scheme is "so opaque" that it is "practically ... incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."

Griffin, 56 F4th at 335 (quoting Ross, 578 U.S. at 643-44). Plaintiff, however, must show that administrative remedies were not available. Graham v. Gentry, 413 Fed. App'x 660, 663 (4th Cir. 2011) (finding it significant that the record was devoid of evidence that any jail official impeded or discouraged any efforts that detainee-plaintiff made or could have made to file a grievance). "And no combination of 'special circumstances' can excuse a prisoner's failure to exhaust.'" Hardin v. Hunt, 2023 WL 3969989, at *2 (4th Cir. Jun. 13, 2023) (quoting Ross, 578 U.S. at 639).

The NCDAC has established, in its Administrative Remedies Procedures ("ARP"), a three-step procedure governing submission and review of inmate grievances. See Moore, 517 F.3d at 721 (regarding the

comparable ARP procedures at NCDAC-predecessor North Carolina Department of Public Safety); [Doc. 23-2 at 4-14; Doc. 23-3 at ¶¶ 6-9: Bass Dec.]. Inmates are required to exhaust administrative remedies with the NCDAC in accordance with the ARP. See id. An inmate does not exhaust his administrative remedies with the NCDAC until he completes all three steps. See id.

## III. DISCUSSION

The Court considers *de novo* whether the Plaintiff failed to exhaust his administrative remedies. On this issue, the Court concurs with Judge Keesler's assessment and overrules Plaintiff's Objections.

Liberally construing Plaintiff's Objections, Plaintiff does not appear to object to any particular finding or recommendation of the Magistrate Judge. Rather, Plaintiff complains that the Magistrate Judge ignored the "record of evidence," that Defendants failed to serve "[his] documents" on him, that he never consented to disposition of the case by a Magistrate Judge, and that the Magistrate Judge issued the Memorandum and Recommendation without an evidentiary hearing, which would have revealed "complaints, false Documents and Delayed Records" by AMCI. [Doc. 37]. Plaintiff additionally asserts that he was housed at a facility that allowed officers to destroy grievances and that he was kept there "until the PLRA deadline was up,"

which proves a conspiracy to cover up constitutional violations, and complains that all named Defendants should be held accountable "where [there was] no resolution for [the] action committed."[2] [Doc. 37 at 1].

Although Plaintiff fails to expressly challenge any finding or conclusion of the Magistrate Judge, the Court will construe Plaintiff's Objections as generally challenging the Magistrate Judge's conclusion that Plaintiff failed to exhaust his administrative remedies and recommendation to dismiss the case without prejudice on this ground.

Plaintiff's filings in this matter are filled with inconsistencies regarding his use of and access to the grievance procedure at AMCI. For instance, in his unverified Complaint, Plaintiff alleged that Defendants shred grievances and deny process to "[a]ny [a]nd [a]ll complaints. [Doc. 1 at 4]. Plaintiff also alleged, however, that he filed a grievance concerning the facts at issue at AMCI and with the "Raleigh Grievance Resolution Board." [Id. at 7]. Plaintiff alleged that in his grievance he complained that he was: (1) falsely accused

[2] None of these assertions are proper objections here. In any event, the Court notes that Plaintiff fails to point to any particular evidence ignored by the Magistrate Judge and the Court sees none. Additionally, Plaintiff's own response to the Defendants' motion to dismiss reflects that he received the grievance records Defendants submitted in support of their motion. [See Doc. 26; see also Docs. 28 at 4, 28-1]. Furthermore, the law allows a Magistrate Judge to recommend a disposition on a motion to dismiss without consent of the parties, 28 U.S.C. § 636(b), and no law requires that an evidentiary hearing be held before such disposition. Finally, Plaintiff's vague, unverified claim of a conspiracy to cover up constitutional violations does nothing to advance his cause here.

of an infraction, threatened, assaulted, and placed in isolation, and (2) retaliated against after writing a grievance complaining that grievances were not getting processed and that staff was ignoring actions taken against inmates like the Plaintiff. [Id.]. Plaintiff alleged that he exhausted his administrative remedies and that he appealed this grievance through "[a]ll [s]teps." [Id. at 7-8].

In support of their motion to dismiss, Defendants provided *inter alia* copies of Plaintiff's six fully exhausted grievances submitted between January 1, 2023, and December 31, 2024, including a grievance Plaintiff fully exhausted while at AMCI; a copy of a December 23, 2023 grievance Plaintiff appealed to Step Two while at AMCI; a copy of Plaintiff's CTS, which logs all grievances and other correspondence filed and transmitted by the Plaintiff while in custody; and copies of two letters Plaintiff submitted to prison management, which were logged in Plaintiff's CTS. [Doc. 23-2 at 15-26; Doc. 23-3 at 5-43; Docs. 28-1, 34]. See Yarber v. Capital Bank, 944 F.Supp.2d 437, 441 (E.D.N.C. Mar. 18, 2013) ("The court may also consider documents attached to the complaint and documents attached to the motion to dismiss if those documents are integral to the complaint and authentic."). [See also Doc. 23-2 at ¶¶ 4-6: Counsel Dec. (attesting to authenticity of grievance records and CTS); Doc. 23-3 at ¶ 11 and at 4: Bass Dec. (same

regarding exhausted grievances)].

The first of these two letters was dated July 21, 2023, and purported to notify officials of Eighth Amendment violations that occurred that day at AMCI (the "First Letter"). [Doc. 34 at 1-2]. In this letter, Plaintiff identified Sergeant Boone as the official responsible for the conduct Plaintiff attributed to Defendant Hicks in his Complaint here. [Id.]. This letter, which is the only complaint identifying the alleged incident before the Court, was not submitted as a proper formal grievance at Step One or otherwise. Nor was it pursued any further.

In the second letter, which was dated August 9, 2023, Plaintiff complained about the AMCI staff's practice of provoking altercations through verbal abuse and falsely accusing offenders when these efforts fail, as well as disregarding grievances and the grievance process (the "Second Letter"). [Id. at 3-4]. It appears that the Second Letter is the "complaint" Plaintiff alleged resulted in the retaliation by Defendants Brown and Aldrige on August 21, 2023. [See id.]. The Second Letter was not properly submitted as a formal grievance and was not pursued any further.

Plaintiff's grievance records show that, between January 1, 2023, and December 31, 2024, while housed at five different correctional facilities, Plaintiff fully exhausted six grievances, one of which was exhausted while he

was housed at AMCI. [Docs. 23-2 at 16-17; 23-3 at ¶ 11; 23-3 at 5-43]. None of these grievances involved the subject of Plaintiff's Complaint here. These records also show that Plaintiff filed a grievance on December 23, 2023, at AMCI that he appealed at Step One and then agreed with the Step Two response thereto. [Doc. 23-2 at 22-26]. In this grievance, Plaintiff complained that he was improperly ordered to leave the chow hall while he was drinking milk. [Id. at 22]. The records before the Court also show that Plaintiff submitted eight grievances at AMCI between January 2, 2024, and May 28, 2024, that were logged into Plaintiff's CTS but copies of which were not provided here. [Id. at 16-17]. Seven of these logged grievances complained of staff conduct and one related to a mail issue.[3] [Id.].

Based on these records, Judge Keesler concluded that Defendants sufficiently established that Plaintiff did not exhaust a grievance regarding either the alleged excessive force incident by Defendant Hicks or the alleged retaliation by Defendants Brown and Aldrige. Judge Keesler also concluded that the records showed that Plaintiff had ready access to the grievance procedure and was able to submit, appeal, and exhaust grievances while at

---

[3] Plaintiff does not contend that any of these grievances concerned the matters at issue and the deadline to file a grievance would have long since passed when these were filed in any event.

AMCI. Judge Keesler noted that, on the one hand, Plaintiff contends all his grievances were destroyed and on the other hand that in investigating the claims made in Plaintiff's Second Letter, Defendants Brown and Aldrige falsified documents and retaliated against Plaintiff. Finally, Judge Keesler acknowledged the First Letter complaining about a July 21, 2023 incident involving Sergeant Boone and two unnamed officials and the Second Letter complaining about staff conduct and the grievance process at AMCI but concluded that these letters do not satisfy the ARP and that neither purported to grieve the retaliation claim in any event.

In response to Defendants' integral records, Plaintiff filed a single-page unverified document. [Doc. 26]. He argued very generally that "[m]ore grievances would or should [h]ave [b]een filed and not [d]estroyed" given how long he was housed at AMCI. [Id.]. Plaintiff argued that this lack of more grievances proves the destruction of grievances, including the grievance that Defendants Brown and Aldrige were supposed to investigate. [Id.]. Plaintiff argued that the grievances from 2023 were destroyed and that Bass "never" responded to any grievance. [Id.]. Plaintiff, however, fails to make any showing of the substance of these purported missing grievances or how they may be relevant here.

Having considered *de novo* whether the Plaintiff failed to exhaust his administrative remedies, the Court agrees with the Magistrate Judge's conclusions. The Defendants have shown that the Plaintiff failed to exhaust his administrative remedies and that Plaintiff had ready access to the grievance process at AMCI. Although Plaintiff appears to have complained to prison management regarding an alleged use of force on July 21, 2023, Plaintiff has not shown that he properly exhausted his administrative remedies in accordance with the ARP regarding either claim at issue here. Nor has Plaintiff shown in the face of Defendants' evidence that the grievance process was unavailable to him.

For these reasons, the Court concurs with the Magistrate Judge's assessment regarding Plaintiff's failure to exhaust his administrative remedies. Accordingly, Plaintiff's Objections are overruled.

## II. CONCLUSION

Having conducted a *de novo* review of those portions of the Memorandum and Recommendation to which objections were filed, the Court concludes that the Magistrate Judge's proposed conclusions of law are supported by and are consistent with current case law. Thus, the Plaintiff's Objections to the Memorandum and Recommendation are overruled.

## **<u>O R D E R</u>**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Objections [Doc. 37] are **OVERRULED,** and the Magistrate Judge's Memorandum and Recommendation [Doc. 36] is **ACCEPTED.**

**IT IS FURTHER ORDERED** that the Defendants' Motion to Dismiss [Doc. 22] is **GRANTED,** and this action is **DISMISSED WITHOUT PREJUDICE**.

The Clerk is respectfully instruction to terminate this action.

**IT IS SO ORDERED**.

Signed: November 9, 2026

Martin Reidinger
Chief United States District Judge